UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Gavin Moyle, by Jessica Repp, his mother
and natural guardian, and Jessica Repp as
trustee for the next-of-kin of Carl Moyle,
deceased,

                Plaintiffs,

                                                Civ. No. 07-848 (RHK/RLE)
                                                **MEMORANDUM OPINION**
                                                **AND ORDER**

v.

Bruce Anderson, individually and in his
official capacity; Patrick Carr, individually
and in his official capacity; Angela Knutson,
individually and in her official capacity;
Brian Frank, individually and in his official
capacity; Cory Schoeck, individually and in his
official capacity; Heather Pickett, individually
and in her official capacity; and Sherburne County,

                Defendants.

---

Sharon L. Van Dyck, Van Dyck Law Firm PLLC, Minneapolis, Minnesota, Richard J. Nygaard, Schwebel, Goetz & Sieben PA, Minneapolis, Minnesota, for Plaintiffs.

Jon K. Iverson, Jason M. Hiveley, Iverson Reuvers LLC, Bloomington, Minnesota, for Defendants.

---

## INTRODUCTION

       This action arises out of the murder of Carl Moyle at the Sherburne County Jail on August 8, 2006. Plaintiffs assert that Defendants failed to provide for Moyle's physical safety as required by the Fifth, Eighth, and Fourteenth Amendments of the United States

Constitution.[1]  Defendants now move for summary judgment.  For the reasons set forth below, the Court will grant the Motion.

## BACKGROUND

On the morning of August 8, 2006, Moyle was pulled over by the Elk River police and arrested for the gross misdemeanor of no proof of insurance.  (Am. Compl. ¶¶ 13-15.)  Subsequently, Moyle was taken to Sherburne County Jail ("Sherburne"), where he was booked and taken to a cell in the Alpha Intake Unit ("AIU").  (Pickett Dep. Tr. at 24-26; Jenson Dep. Tr. at 35.)  Moyle was to remain in the AIU until the following day, when he was to appear before a Sherburne County judge.  (Pickett Dep. Tr. at 26.)

Also on August 8, 2006, Bruce Christenson was transported from Oak Park Heights prison ("OPH") to Sherburne by Transportation Deputy Cory Schoeck.  (Schoeck Dep. Tr. at 21-22.)  OPH is the only Class 5, maximum-security prison in the state of Minnesota.  (Stoltz Dep. Tr. at 15; Carlson Dep. Tr. at 38-39.)  The phrase "Class 5" indicates that the majority of OPH inmates are inmates with the highest risk of escape and/or violence.  (Carlson Dep. Tr. at 38-39.)  Christenson was housed at OPH in a segregation unit known as Complex 5.  (Ayers Dep. Tr. at 41.)  Generally speaking, inmates are placed in Complex 5 for punitive purposes after breaking prison rules.  (Id. at 38-39.)  Christenson was placed in Complex 5 for a 120-day period as a result of his attack on a fellow inmate while housed at the Minnesota Correctional Facility in St. Cloud.  (Id. at 77-80; Miller Dep. Tr. Ex. 8.)  At the time of this attack, Christenson was

---

[1] Plaintiffs are Gavin Moyle, Carl Moyle's son, and Jessica Repp, Gavin Moyle's guardian and trustee for the next-of-kin of Carl Moyle.

serving a 108-month sentence for first-degree aggravated robbery, theft of a motor vehicle, theft, and first-degree test refusal. (Ayers Dep. Tr. Ex. 1.)

Christenson was transferred on a Writ from OPH to Sherburne to appear before the Sherburne County District Court. (Schoeck Dep. Tr. at 23-25.) He was to be charged with second-degree assault with a dangerous weapon for the above-referenced inmate attack. (Ayers Dep. Tr. Ex. 2.) During the course of this transfer, no official from OPH recalls receiving any communication from Sherburne County officials inquiring into the violent nature of Christenson. (Bjorkman Dep. Tr. at 20-21; Miller Dep. Tr. at 38.) OPH officials in direct communication with Sherburne concerning Christenson's transfer also maintain that it was not their responsibility to provide such information. (Bjorkman Dep. Tr. at 26; Miller Dep. Tr. at 64-65.)[2] However, Donna Miller, an OPH records official, recalls referring to Christenson as a "bad boy" when discussing him with Schoeck on the day of the transfer.[3] (Miller Dep. Tr. at 20-21, 75-76.) Colleen Pederson, another OPH records official, overhead Miller's statement to Schoeck, maintaining that Miller's full statement was, "[o]h, you are picking up one of our bad boys from seg."[4] (Pederson Dep. Tr. at 22-23.) Miller considered her statement to be an offhand remark, and it was not intended as a warning regarding Christenson's violent tendencies. (Miller Dep. Tr. at

---

[2] Sherburne County officials believed that information concerning problematic inmate behavior would be provided to them when a transfer was scheduled. (Peterson Aff. ¶¶ 14-16; B. Anderson Dep. Tr. at 29-36; Knutson Dep. Tr. at 16-17.) When information regarding Christenson's violent behavior was not proffered by OPH, it was interpreted by Sherburne County officials as an affirmation that Christenson was not a problematic inmate. (Peterson Aff. ¶¶ 13-18.)

[3] Schoeck testified that he did not hear any such statement. (Schoeck Dep. Tr. at 36.)

[4] The term "seg" is commonly used by prison officials to refer to segregation housing units. In such units, inmates are given little to no contact with other inmates.

48.) Schoeck testified that if he had known Christenson was a violent inmate from segregation, he would have communicated such information to Sherburne County officials. (Schoeck Dep. Tr. at 37.)

When Christenson arrived at Sherburne, he was booked by Corrections Officer Heather Pickett. (Pickett Dep. Tr. at 24.) At that time, the booking policy at Sherburne required booking officers to ask inmates several questions and to review any other available information in order to classify inmates as low-risk or high-risk. (Knutson Dep. Tr. at 12-16.) If information was not provided to the booking officer concerning the previous violent behavior of an inmate, such information was not affirmatively sought. (Pickett Dep. Tr. at 46-47; Knutson Dep. Tr. at 15-17.) Generally, incoming inmates were initially assigned to the AIU for a 72-hour observation period, after which they were re-classified. (Jenson Dep. Tr. at 19.) Inmates like Christenson, coming to Sherburne temporarily on a Writ, were also housed in the AIU. (Id.) If classified as high-risk, inmates were placed in a special housing unit. (Pickett Dep. Tr. at 54.) In 2004 and 2006, the Department of Corrections inspected all required policies and procedures utilized at Sherburne, including the classification policy, and found all of them to be compliant with the rules governing detention facilities in Minnesota. (Carlson Dep. Tr. Ex. 1; Croucher Dep. Tr. at 22-23, 39, 66.)

For classification purposes, Schoeck recorded that Christenson was transported from OPH and charged with second-degree assault. (Pickett Dep. Tr. at 48-49; Schoeck Dep. Tr. at 50-51.) This information was the only information provided to Pickett. (Pickett Dep. Tr. at 48.) Pickett was not aware that Christenson was housed in

segregation at OPH or that Christenson was referred to as a "bad boy" by Miller. (Id. at 54-56.) Pickett also was not aware that Christenson had a history of mental illness and had previously attacked an inmate. (Id. at 42, 49-50.) During the classification procedure, Christenson displayed no signs of abnormal or violent behavior. (Id. at 64-65.) Based on her questioning of Christenson, his general demeanor, and the information provided, Pickett classified Christenson as low-risk. (Id. at 53, 64-65.) Thereafter, Christenson was assigned to a handicap cell in the AIU next to Moyle's cell. (Trushenski Dep. Tr. at 7, 10-11; Jenson Dep. Tr. at 71.)[5]

On August 8, 2006, the AIU was a small unit with several cells and an open area. (Jenson Dep. Tr. at 18.) While there, Christenson detached a handicap rail from the wall of his cell. (Brott Aff. Ex. 1.)[6] He then walked through the open door of Moyle's cell and bludgeoned him to death. (Id.)

On February 6, 2007, Plaintiffs commenced the instant action against Schoeck, Pickett, and several other high-ranking officials from Sherburne County, in their individual and official capacities, as well as Sherburne County itself. Plaintiffs assert three claims: a failure-to-protect claim pursuant to 42 U.S.C. § 1983; a corresponding Monell claim against Sherburne County; and a state-law wrongful-death claim. (Am.

---

[5] In his deposition, Senior Detention Facility Inspector Greg Croucher was critical of Christenson's classification. (Croucher Dep. Tr. at 32, 39-42.) Croucher stated that Christenson should have been classified as high-risk based solely on the fact that he was coming from OPH on the charge of second-degree assault. (Id. at 44-46.)

[6] A handicap railing had never been removed from a cell wall prior to this incident. (Carlson Dep. Tr. at 11; Croucher Dep. Tr. at 31.)

5

Compl. ¶¶ 30-39.)  Defendants now move for summary judgment on all of Plaintiffs' claims.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

**I.   The failure-to-protect claim fails as a matter of law.**

Plaintiffs first assert a failure-to-protect claim pursuant to 42 U.S.C. § 1983.  The threshold question when analyzing a Section-1983 claim is whether the plaintiff can establish a constitutional violation.  Cross v. City of Des Moines, 965 F.2d 629, 631-32 (8th Cir. 1992) (quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  If no constitutional

6

violation has been established, "the plaintiff's lawsuit must be dismissed." Cross, 965 F.2d at 632. Defendants argue that Plaintiffs' first claim must fail because they cannot establish a constitutional violation. (Def. Mem. at 15-27; Reply Mem. at 1-5.)[7] The Court agrees.

Plaintiffs and Defendants advocate for the application of different legal standards for determining whether a constitutional violation has occurred. Plaintiffs argue that an "objective reasonableness" standard should apply because Moyle was an arrestee, not a convicted prisoner or a pre-trial detainee. (Mem. in Opp'n at 26-34.) Defendants, on the other hand, argue that the Eighth Amendment "deliberate-indifference" standard that applies to convicted prisoners should be applied. (Def. Mem. at 15-17; Reply Mem. at 1-5.) For the reasons set forth below, the Court determines that the deliberate-indifference standard is the appropriate standard to be applied in this case.

### A. The distinction between convicted prisoners, pre-trial detainees, and arrestees

"Pre-trial detainees are those individuals who the government has probable cause to believe have committed crimes." Johnson-El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989). Plaintiffs contend that Moyle was an arrestee, not a pre-trial detainee, because he had not appeared before a judge for a probable-cause determination. (Mem. in Opp'n at 27.)

---

[7] For this same reason, the individual Defendants argue that they are entitled to qualified immunity. (Def. Mem. at 13-30.) Municipal officials are entitled to qualified immunity if no constitutional violation can be established. See, e.g., Vaughn v. Green County, 438 F.3d 845, 850 (8th Cir. 2006). Therefore, if no constitutional violation is established, "there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001).

7

Plaintiffs argued in their brief and in oral argument that in the failure-to-protect context, arrestees should be afforded more constitutional protection than is provided to pre-trial detainees or convicted prisoners. (Mem. in Opp'n at 26-34.) Plaintiffs' argument, however, is not supported by any Eighth Circuit or Supreme Court decision. Indeed, Plaintiffs have not cited any federal case that has provided greater constitutional protection to arrestees in the failure-to-protect context than is provided to pre-trial detainees. In the absence of any authority supporting the application of an alternative standard, this Court applies the constitutional standard applicable to pre-trial detainees.[8]

Plaintiffs also appear to argue that even if Moyle were treated as a pre-trial detainee, such detainees should be granted greater constitutional protection than convicted prisoners. (Reply Mem. at 29-34.) This proposition, however, also is not supported by any Eighth Circuit or Supreme Court decision.

Generally speaking, pre-trial detainees are distinguished from convicted prisoners because "the state has no right to punish them." Johnson-El, 878 F.2d at 1048 (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). Thus, the conditions and restrictions of confinement for pre-trial detainees are analyzed under the Due Process Clauses of the Fifth and Fourteenth Amendments, not the Eighth Amendment. Id. Nevertheless, the Eighth Circuit has stated that for pre-trial detainees, courts should "apply the identical deliberate-indifference standard as that applied to conditions-of-confinement claims made by convicts." Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005). In fact, the

---

[8] This Court does not address the issue of whether Moyle was in fact an arrestee because such a determination is not necessary in this case.

8

Eighth Circuit has several times applied the Eighth Amendment deliberate-indifference standard to pre-trial detainees' failure-to-protect claims.  See e.g., Hott v. Hennepin County, 260 F.3d 901, 906-07 (8th Cir. 2001); Perkins v. Grimes, 161 F.3d 1127, 1129-30 (8th Cir. 1998); Doe v. Wash. County, 150 F.3d 920, 922-23 (8th Cir. 1998); Thomas v. Booker, 784 F.2d 299, 303 (8th Cir. 1986).[9]  Plaintiffs have not cited any Eighth Circuit or Supreme Court decision granting greater constitutional protection to pre-trial detainees in the failure-to-protect context, nor has this Court found any case so holding.  Accordingly, pursuant to the aforementioned Eighth Circuit jurisprudence, the deliberate-indifference standard must be applied in this case.

### B.  Establishing a constitutional violation: deliberate indifference

"The Eighth Amendment imposes a duty on the part of prison officials to protect prisoners from violence at the hands of other prisoners."  Perkins, 161 F.3d at 1129 (citing Farmer v. Brennan, 511 U.S. 825, 833 (1994)).  However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."  Farmer, 511 U.S. at 834.  Indeed, "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment."

---

[9] Plaintiffs are correct that in Boswell v. Sherburne County, the Eighth Circuit noted that it was unclear whether the Fourteenth Amendment provides pre-trial detainees with greater protection than the Eighth Amendment in the failure-to-provide-adequate-medical-care context.  849 F.2d 1117, 1121 n.3 (8th Cir. 1988).  In that case, the Eighth Circuit found it "unnecessary and unwise" to make a finding on that issue, as it was not "essential" to the resolution of the case and because the question had "provoked various responses from the courts of appeals."  Id. at 1121.  Therefore, the court applied the Eighth Amendment deliberate-indifference standard.  Id.  Subsequent to Boswell, however, the Eighth Circuit has applied the deliberate-indifference standard to pre-trial detainees' failure-to-protect claims without pause.  See, e.g., Crow, 403 F.3d at 601.  This Court is bound by this Eighth Circuit precedent, and will apply the deliberate-indifference standard here.

9

Id. (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)).  To violate the Eighth Amendment, therefore, "a prison official must have a 'sufficiently culpable state of mind.'"  Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).  Hence, deliberate indifference has both an objective and a subjective component: the objective component requires the plaintiff to demonstrate "a substantial risk of serious harm," while the subjective component requires the plaintiff to show that defendants "actually knew of but disregarded, or were deliberately indifferent to," the substantial risk of serious harm.  Crow, 403 F.3d at 602.

The Supreme Court in Farmer described in detail the stringent requirements of the subjective component of deliberate indifference.  511 U.S. at 835-47.  Deliberate indifference "entails something more than mere negligence, . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  Id. at 835.  Indeed, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  Therefore, "an official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference.  Id. at 838.  A plaintiff may establish an official's actual knowledge of a substantial risk of harm "in the usual ways, including inference from circumstantial evidence."  Id. at 842.  In fact, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."  Id.

Applying this standard, the Eighth Circuit has addressed the failure-to-protect claim of a pre-trial detainee under circumstances similar to those presented here.  In

10

Crow, a pre-trial detainee was placed in a cell that "consisted of a day room and two bedroom cells." 403 F.3d at 600. Shortly after his placement in the cell, two other inmates entered and broke his jaw. Id. The detainee thereafter brought several Section-1983 claims against jail officials, including a claim that the attacking inmates were "inadequately classified." Id. at 602. On appeal, the Eighth Circuit held that even if the prison officials "were unreasonable, and might have done various things to prevent the blow [to] Crow, 'reasonableness is a negligence standard' and negligence cannot give rise to an Eighth Amendment failure-to-protect claim." Id. Accordingly, the Eighth Circuit held that the detainee had "not made out a constitutional violation." Id. at 603.

Similar to the pre-trial detainee in Crow, Plaintiffs cannot establish that a constitutional violation occurred in this case. While some evidence in the record may demonstrate that Defendants "might have done various things to prevent" the death of Moyle, there is no evidence of deliberate indifference. As demonstrated below, the record is devoid of any evidence demonstrating that any named Defendant had actual knowledge of Christenson's violent proclivities or that Sherburne's classification policies might allow a dangerous inmate to be placed in contact with other inmates. Accordingly, even if the placement of Christenson in the AIU with Moyle constituted an objective, substantial risk of physical harm, Plaintiffs' claim fails as they cannot demonstrate that any Defendant here knew of, but disregarded, or was deliberately indifferent to, a substantial risk of harm.

### 1. Pickett

Plaintiffs must establish that Pickett, in her classification of Christenson as low-

risk, was deliberately indifferent to a substantial risk of harm to Moyle and other inmates to be housed with Christenson. Plaintiffs have not done this.

In <u>Williams v. Kelso</u>, an inmate's heirs asserted that a jail official's failure to properly "classify and separate" the inmate from other inmates resulted in constitutional harm. 201 F.3d 1060, 1068 (8th Cir. 2000). The inmate was placed in a cell with other inmates when he was suffering from "intermittent psychosis." <u>Id.</u> at 1063. While in the cell, a fight broke out which allegedly caused the inmate to later commit suicide. <u>Id.</u> The Eighth Circuit found that while the classification officer may have been negligent in not recognizing the inmate's serious mental condition and failing to call for medical assistance and/or segregating the inmate, the record lacked any evidence of deliberate indifference. <u>Id.</u> at 1069. Therefore, the court reversed the district court's denial of summary judgment in favor of the classification officer. <u>Id.</u>

Similar to the classification officer in <u>Williams</u>, there is no evidence here that Pickett performed her classification of Christenson with deliberate indifference. Plaintiffs assert in their brief that the "facts present here support the inference that Heather Pickett subjectively drew the inference" that Christenson created a substantial risk of harm. (Mem. in Opp'n at 35.)[10] While actual, subjective knowledge can sometimes be inferred when a substantial risk of harm is obvious, <u>see</u> <u>Farmer</u>, 511 U.S. at 842, there is no evidence in this case to support such an inference.

During the classification procedure, Pickett asked Christenson all required

---

[10] Plaintiffs also assert that Pickett "made a mistake when she typed in the charge from the detainer sheet." (Mem. in Opp'n at 36.) The Court fails to see how such a mistake in any way implies *deliberate* indifference.

12

questions and analyzed all the information before her, including the demeanor of Christenson, and the fact that Christenson was coming from OPH facing charges of assault.  Based on this process, Pickett determined that Christenson was low-risk.  While the record may establish that Pickett was negligent in not seeking additional information concerning Christenson, or in not classifying Christenson as high-risk based on the information presented to her, the record is devoid of any evidence establishing that Pickett was actually aware of a substantial risk of harm posed by Christenson.  The record is similarly devoid of any evidence establishing that Pickett was actually aware that she possessed an insufficient amount of information to properly classify Christenson.  Pickett complied with all of the then-established classification procedures.  That Pickett completed the classification procedure, as she understood it, lends credence to the inference that Pickett honestly and subjectively believed her classification was accurate.

Accordingly, Pickett is entitled to summary judgment on Plaintiffs' failure-to-protect claim.

   **2. Schoeck**

Plaintiffs similarly cannot establish the deliberate indifference of Schoeck.  Plaintiffs claim that Schoeck was deliberately indifferent when he did not communicate Miller's purported statement that Christenson was a "bad boy from seg" to Sherburne County officials.  (Mem. in Opp'n at 37.)  Plaintiffs further claim that Schoeck was deliberately indifferent in not making further inquiries into the violent nature of Christenson while effectuating the transfer.  (Id.)  In their attempt to establish such deliberate indifference, Plaintiffs assert that a "jury could readily infer that [Schoeck's]

13

failure to ask or to transmit critical information to Pickett had more to do with his callous attitude and indifference than with his lack of subjective knowledge of the risk Christenson posed." (Id. at 38.) The Court does not agree.

The evidence in the record does not create a genuine issue of material fact as to whether Schoeck was deliberately indifferent when he did not communicate the "bad boy from seg" comment. Miller herself, the OPH records official who made this statement, said that she did not intend her words to serve as a warning regarding Christenson's violent tendencies. With the exception of this off-the-cuff comment, Plaintiffs can point to no evidence demonstrating that Schoeck was subjectively aware that Christenson might pose a substantial risk of harm. Nothing in the record indicates that Christenson acted in an unusual or violent manner that would put Schoeck on notice that he was dangerous. At worst, Schoeck was negligent in not communicating to Sherburne County officials the statement that Christenson was a "bad boy from seg," but negligence is not enough to establish liability in this case.

Nor does the evidence in the record create a genuine issue of material fact as to whether Schoeck was deliberately indifferent when he did not inquire into the violent tendencies of Christenson. Schoeck maintains that if he had known Christenson to be a violent inmate from segregation, he would have communicated such information to Pickett. However, Plaintiffs have not established that it was Schoeck's affirmative duty to inquire into the behavioral tendencies of all inmates in his custody. Schoeck was a transportation deputy, not a classification officer. The fact that Schoeck did not affirmatively inquire into Christenson's behavior after hearing that he was a "bad boy

14

from seg," is at worst negligent. Nothing in the record indicates that Schoeck believed Christenson would create a substantial risk of harm.

Accordingly, Schoeck is entitled to summary judgment on Plaintiffs' failure-to-protect claim.

### 3. Sheriff Bruce Anderson, Patrick Carr, Angela Knutson, and Brian Frank

Sheriff Anderson, Carr, Knutson, and Frank are high-ranking officials in Sherburne County. Plaintiffs do not contend that these Defendants had any direct role in the transportation, classification, or cell assignment of Christenson or Moyle on August 8, 2006. Nevertheless, a plaintiff may establish the individual liability of a high-ranking official in one of three ways: personal involvement, personal knowledge, or breach of a legal duty that is the proximate cause of a constitutional violation. Johnson-El, 878 F.2d at 1049. Specifically, officials can be found personally liable for policy decisions, but only if they have personal knowledge of occurring constitutional violations, or if they participate "in decisions causing those violations, or in decisions foreseeably preventing their redress, or comparable omissions." Id. at 1050.

#### a. Carr, Knutson, and Frank

Plaintiffs allege that Carr, Knutson, and Frank are high-ranking Sherburne County officials with personal responsibility for drafting the booking, classification, and transportation policies at Sherburne. (Mem. in Opp'n at 38-39.) Plaintiffs also note that Carr, Knutson, and Frank have training and supervisory responsibilities. (Id. at 39-40.) Plaintiffs allege that Defendants performed these responsibilities with "complete

15

passivity" and that their "failure to address" the problem of transferred prisoners arriving at Sherburne without important classification information constitutes deliberate indifference.  (Id. at 40.)  The Court disagrees.

The record is devoid of any evidence showing that Carr, Knutson, or Frank were subjectively aware of a substantial risk of harm created by Sherburne's booking, classification, or transportation policies.  Without such awareness, deliberate indifference cannot be established.  Furthermore, there is no evidence showing that these Defendants were subjectively aware of a substantial risk of harm created by the way such policies were implemented by Sherburne County personnel under their supervision.  The record does not indicate that any previous incidents had occurred where a dangerous inmate was placed in the AIU, or in a general population unit, as a result of a lack of information concerning the inmate's behavioral tendencies.  Without any such prior incidents, Carr, Knutson, and Frank lacked notice that their booking, classification, and transportation policies were in any way deficient.  Moreover, in 2004 and 2006, the Department of Corrections inspected the classification policies of Sherburne and found them to be compliant with the rules governing detention facilities in Minnesota.

Accordingly, Carr, Knutson, and Frank are entitled to summary judgment on Plaintiffs' failure-to-protect claim.

### b. Sheriff Anderson

Plaintiffs state that Sheriff Anderson, as Sherburne County's chief law-enforcement officer, had "supervisory authority with respect to the classification and transportation policies" at Sherburne.  (Mem. in Opp'n at 41.)  Plaintiffs further note that

Sheriff Anderson was the only official responsible for the information flow between Sherburne and the Sheriff's department. (Id.) Plaintiffs contend that Sheriff Anderson demonstrated deliberate indifference by not instituting a policy whereby the criminal complaints of inmates were shared with classification officers. (Id.)

Like Carr, Knutson, and Frank, Sheriff Anderson had no notice that the policies at Sherburne, over which he had supervisory authority, were in any way deficient. As such policies were reviewed and considered compliant by the Department of Corrections, Sheriff Anderson would have no way of knowing that inmates could be transferred between detention facilities without the proper information being communicated. With no evidence in the record establishing notice to Sheriff Anderson, Plaintiffs cannot establish that he was subjectively aware of a substantial risk of harm posed by Sherburne policy and procedure.

Accordingly, Sheriff Anderson is entitled to summary judgment on Plaintiffs' failure-to-protect claim.

## II.     Plaintiffs' Monell claim fails as a matter of law.

For a municipality to be liable under Section 1983, a plaintiff must identify a municipal "policy" or "custom" that caused a constitutional injury. Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. N.Y. City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978)). Thus, Plaintiffs must demonstrate that "through its *deliberate* conduct, [Sherburne County] was the 'moving force' behind the injury alleged. That is, [they] must show that the municipal action was taken with the requisite degree of culpability." Bd. of County Comm'rs, 520 U.S. at 404.

17

Having established that no constitutional violation was perpetrated by any individual Defendant in this case, Sherburne County cannot have been the "moving force" behind a constitutional violation. The Supreme Court has stated that neither Monell, nor any other Supreme Court case, "authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the [court] has concluded that the officer inflicted no constitutional harm." City of L.A. v. Heller, 475 U.S. 796, 799 (1986). In addition, the Eighth Circuit has held that a municipality cannot be held liable for a municipal custom or policy when the individual officer is not found liable "on the underlying substantive claim." Abbott v. City of Crocker, 30 F.3d 994, 998 (8th Cir. 1994). When no "deprivation of rights" has occurred, there is nothing for which the municipality can be liable. Wilson v. Spain, 209 F.3d 713, 717 (8th Cir. 2000) (quoting 42 U.S.C. § 1983).[11]

Accordingly, Sherburne County is entitled to summary judgment on Plaintiffs' Monell claim.[12]

### III. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law wrongful-death claim.

Having concluded that Defendants' Motion for Summary Judgment must be granted vis-à-vis the Section-1983 and Monell claims, the Court's original jurisdiction

---

[11] But see Doe, 150 F.3d at 922 (stating that, in some circumstances, a "governmental entity can be liable under section 1983 even though no government official was found personally liable").

[12] As official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent," all Defendants sued in their official capacities are also entitled to summary judgment. Monell, 436 U.S. at 690 n.55.

has been extinguished. Pursuant to 28 U.S.C. § 1367(c)(3), the Court may, *sua sponte*, decline to exercise supplemental jurisdiction over a pendent state-law claim if it has dismissed all claims over which it has original jurisdiction. Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004). When all federal claims are eliminated before trial, the balance of factors to be considered in deciding whether to exercise supplemental jurisdiction over a pendent state-law claim typically militates against exercising jurisdiction. Id. (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). Based on Section 1367(c)(3) and Johnson, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law wrongful-death claim.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 58) is **GRANTED**. Plaintiffs' federal claims (Am. Compl. ¶¶ 30-36) are **DISMISSED WITH PREJUDICE** and Plaintiffs' state-law wrongful-death claim (Am. Compl. ¶¶ 37-39) is **DISMISSED WITHOUT PREJUDICE**.[13]

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 15, 2008           s/Richard H. Kyle
                                  RICHARD H. KYLE
                                  United States District Judge

---

[13] See 28 U.S.C. § 1367(d).